# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| SAMAN DIDBAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL R. POMPEO, *et al.*, <br><br> Defendants. |

Case No. 19-cv-881 (CRC)

## MEMORANDUM OPINION

Presidential Proclamation 9645 bans citizens of seven countries, including Iran, from entering the United States. But it allows consular officers to waive that restriction on a case-by-case basis. Plaintiffs Saman Didban, a United States legal permanent resident, and his wife, Fataneh Rostami, an Iranian national, submitted a waiver application two years ago that the Government has not yet processed. Arguing that this delay is unreasonable, Plaintiffs seek to compel the Government, under the Administrative Procedure Act and the Mandamus Act, to reach a decision on Ms. Rostami's application. Finding that the Government's delay is not unreasonable in light of the circumstances, the Court will grant the Government's motion to dismiss.

I. Background

A. Legal Background

Under the Immigration and Nationality Act ("INA"), a U.S. citizen or legal permanent resident who wishes to bring a foreign national spouse to the United States must begin the immigration process by filing a Petition for Alien Relative (form I-130) with the United States Customs and Immigration Service ("USCIS"). 8 U.S.C. § 1154. If USCIS confirms that the I-130 form meets the threshold requirements, it sends the petition to the U.S. embassy with

jurisdiction over the foreign spouse's residence.  See 8 C.F.R. § 204.1(a)(1).  The foreign spouse must then submit an Online Immigrant Visa and Alien Registration Application (form DS-260) and appear for an interview with a consular officer at the embassy.

At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa . . . ."  22 C.F.R. § 42.81(a).  "If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available."  9 Foreign Affairs Manual ("FAM") § 504.1-3(g).  "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  22 C.F.R. § 42.81(e).  At all times, the alien bears the burden of establishing that she "is not inadmissible" and "that [s]he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed." 8 U.S.C. § 1361.

The INA grants broad authority to the President to control the admission of aliens.  It states:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

Id. § 1182(f).  In September 2017, President Trump exercised this authority by signing Presidential Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats."  82 Fed. Reg. 45,161 (Sept. 24, 2017) ("the Proclamation").  The Proclamation arose out of the Secretary of Homeland Security's finding that "a small number of countries . . . remain deficient . . . with

2

respect to their identity-management and information-sharing capabilities, protocols, and practices" and that these deficiencies prevent the United States from adequately assessing whether foreign nationals from those countries pose national security threats. Id. at 45,161. With limited exceptions not at issue here, the President banned entry into the United States by nationals of seven countries, including Iran. Id. at 45,162, 45,165-67. Following several iterations of the restrictions and extensive litigation in the lower federal courts, the Supreme Court ultimately upheld the constitutionality of the present version of the ban. Trump v. Hawaii, 138 S. Ct. 2392, 2423 (2018).

The Proclamation provides for waiver of its restrictions in individual cases. "[A] consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ." Proclamation, 82 Fed. Reg. at 45,168. "A waiver may be granted only if a foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." Id.

The President did not instruct the Secretary of State and Secretary of Homeland Security on how they should implement this waiver provision, instead simply directing them to "coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants." Id. The Proclamation does, however, include specific examples of when the award of a waiver would be appropriate. These examples include when a foreign applicant "seeks to enter the United States to visit or

3

reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa," and for whom "the denial of entry would cause . . . undue hardship." Id. at 45,169.  As of September 2019, 9,473 waivers had been issued to visa applicants otherwise barred from entry by the Proclamation, while some 15,000 applicants remain under review.  See U.S. Dep't of State, Implementation of Presidential Proclamation 9645 at 3 (Sept. 2019) (explaining that "nearly a third" of the 45,662 currently ineligible visa applicants "are likely to be issued visas, pursuant to waivers of P.P. 9645, following completion of national security checks").[1]

    B.  Ms. Rostami's Visa and Waiver Applications

On November 24, 2015, Mr. Didban filed an I-130 Petition on behalf of his wife, Ms. Rostami.  Compl. ¶ 57.  On July 16, 2017, Ms. Rostami submitted her DS-260 form, along with the applicable fees and documents.  Id. ¶ 58.  On December 3, 2017, Ms. Rostami submitted Supplemental Questions for Visa Application form (D-5535), after receiving a request from the embassy to do so.  Id. ¶ 59.

On December 28, 2017, Ms. Rostami was interviewed by a consular officer of the U.S. Embassy in Ankara, Turkey.  Id. ¶ 60.  During the interview, she attempted to give the consular officer a statement explaining her eligibility for waiver but, according to her, the consular officer refused to accept the document, explaining that she did not need to file anything in order to be considered for waiver.  Id. ¶ 62.  At the conclusion of the interview, Ms. Rostami's visa application was refused pursuant to the Proclamation.  Id. ¶ 62; Exh. E.  After making an initial assessment that Ms. Rostami appeared to meet the first two prongs of the waiver analysis

---

[1] https://travel.state.gov/content/dam/visas/presidentialproclamation/Presidential%20Proclamation%209645%20Report%20%E2%80%93%20September%202019.pdf

(personal hardship and national interest), the officer referred her waiver application for further review regarding whether her entry would "pose a threat to the national security or public safety of the United States." Proclamation, 82 Fed. Reg. at 45,168. Since then, USCIS has listed her waiver application as undergoing administrative processing. Compl. ¶¶ 64–65. The Government has informed Ms. Rostami that applying for a waiver "can be a lengthy process, and until the consular officer can make an individualized determination on these three factors, your visa application will remain refused under Section 212(f). You will be contacted with a final determination on your visa application as soon as practicable." Id. Exh. H.

On March 27, 2019, after waiting fifteen months for a decision from USCIS, Plaintiffs filed a petition for writ of mandamus and complaint for declaratory relief in this Court. Plaintiffs do not seek to compel the Government to grant Ms. Rostami a waiver, but merely "challeng[e] the Embassy's authority to refuse to adjudicate Plaintiff Rostami's immigrant visa application." Id. ¶ 13. Plaintiffs request an order directing the Government to adjudicate Ms. Rostami's waiver application. According to Plaintiffs, a declaratory judgment would be proper under the Administrative Procedure Act ("APA"), which grants courts the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Alternatively, they seek a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, which grants district courts jurisdiction to hear "action[s] in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Id. 33–34 (quoting 28 U.S.C. § 1361).

The Government moves to dismiss Plaintiffs' claims. It raises various objections under Federal Rule of Civil Procedure 12(b)(1) to this Court's subject matter jurisdiction. Even assuming that this Court has jurisdiction, the Government also argues that Plaintiffs have failed

to state a claim under Federal Rule of Civil Procedure 12(b)(6) because the two-year delay in adjudicating Ms. Rostami's waiver application is not unreasonable.

## II. Standard of Review

When analyzing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint, and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. F.D.I.C., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "[w]here necessary to resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (internal citation and quotation marks omitted).  The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge [ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

**III. Analysis**

   A. <u>Jurisdiction</u>

Defendants raise two jurisdictional bars—the doctrine of consular non-reviewability and mootness—to Plaintiffs' APA and Mandamus Act claims.

"[U]nder the long-standing doctrine of consular non-reviewability, courts do not typically have subject-matter jurisdiction to review visa denials because consular officers 'have complete discretion over issuance and revocation of visas.'" <u>Rohrbaugh v. Pompeo</u>, 394 F. Supp. 3d 128, 131 (D.D.C. 2019) (CRC) (quoting <u>Saavedra Bruno v. Albright</u>, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999)). This doctrine applies broadly, barring judicial review "even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error." <u>Van Ravenswaay v. Napolitano</u>, 613 F. Supp. 2d 1, 5 (D.D.C. 2009) (quoting <u>Chun v. Powell</u>, 223 F. Supp. 2d 204, 206 (D.D.C. 2002)); <u>see also</u> <u>Castaneda-Gonzalez v. Immigration & Naturalization Serv.</u>, 564 F.2d 417, 428 n.25 (D.C. Cir. 1977) ("[A] consular officer could make such a decision without fear of reversal since visa decisions are nonreviewable."). "Courts routinely apply this doctrine to bar suits seeking review of visa denials . . . ." <u>Rohrbaugh</u>, 394 F. Supp. 3d at 131.[2]

---

[2] There is some ambiguity as to whether the doctrine of consular non-reviewability limits this Court's subject matter jurisdiction. Several courts in this district, including this one, have characterized the doctrine of consular non-reviewability as bearing on subject matter jurisdiction. <u>See, e.g.</u>, <u>Rohrbaugh</u>, 394 F. Supp. 3d at 131; <u>Baan Rao Thai Rest. v. Pompeo</u>, No. 19-CV-0058-ESH, 2019 WL 3413415, at *2 (D.D.C. July 29, 2019); <u>Jathoul v. Clinton</u>, 880 F. Supp. 2d 168, 172 (D.D.C. 2012). While the Circuit has not definitively addressed this issue, <u>see</u> <u>Saavedra Bruno</u>, 197 F.3d at 1159–61, other circuit courts of appeals have concluded that the doctrine is <u>not</u> jurisdictional, <u>Allen v. Milas</u>, 896 F.3d 1094, 1102 (9th Cir. 2018) ("[T]he rule of consular nonreviewability[] supplies a rule of decision, not a constraint on the subject matter jurisdiction of the federal courts."); <u>Matushkina v. Nielsen</u>, 877 F.3d 289, 294 n.2 (7th Cir. 2017) ("We treat

In the Government's view, because Ms. Rostami's visa application was refused at the conclusion of her December 28, 2017 interview, the doctrine of consular non-reviewability precludes this Court from re-adjudicating that decision. Mot. at 6. ("Plaintiffs purport to seek judicial review of the consular officer's finding that Rostami is an inadmissible alien."). The Government is correct that this Court is barred from reviewing the consular officer's *decision to deny* Ms. Rostami's visa application, but that is not what Plaintiffs seek. Rather, Plaintiffs request review of the Government's *failure to decide* Ms. Rostami's waiver application. Compl. ¶ 13. Thus, while the doctrine of consular non-reviewability would almost certainly bar this Court from evaluating a consular officer's denial of a waiver, it does not prevent the Court from considering Plaintiffs' claim that the Government has unreasonably delayed rendering a decision. As other courts in this district have held, "the doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application." Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 290 (D.D.C. 2016); see Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo, No. 18-CV-01388-TSC, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019) (noting that consular non-reviewability does not apply where plaintiffs "do not seek judicial review of a consular decision, but instead seek a final decision on their applications").

---

the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction."). In Trump v. Hawaii, the Supreme Court "assume[d] without deciding that plaintiffs' statutory claims are reviewable, notwithstanding consular nonreviewability," though the Court expressly noted that "[t]he Government does not argue that the doctrine of consular nonreviewability goes to the Court's jurisdiction," and the Court therefore had no occasion to address the proper characterization of the doctrine. 138 S. Ct. at 2407. In any case, because this Court concludes that consular non-reviewability does not apply here, it need not resolve this debate.

8

Courts outside this Circuit largely agree with that conclusion. See Emami v. Nielsen, 365 F. Supp. 3d 1009, 1018–19 (N.D. Cal. 2019) (holding that the doctrine of consular non-reviewability did not bar review of plaintiffs' claims that the government had failed to follow its own guidelines in adjudicating waiver applications); Najafi v. Pompeo, No. 19-CV-05782-KAW, 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) ("Plaintiffs are still *waiting* for a decision by the consular officer, there is no decision to review and thus consular nonreviewability is not at issue."); see also Patel v. Reno, 134 F.3d 929, 931–32 (9th Cir. 1997) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review . . . . However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists."). But see Abdo v. Tillerson, No. 17-CIV-7519-PGG, 2019 WL 464819, at *3–4 (S.D.N.Y. Feb. 5, 2019) (holding that the doctrine of consular non-reviewability bars review of allegations that the Government failed to adjudicate a waiver application).

Because Plaintiffs do not seek review of a consular officer's decision, the doctrine of consular non-reviewability does not apply.[3]

The Government's second jurisdictional argument fares no better. It contends that Plaintiffs' case is moot because this Court lacks the power to order the Government to grant Plaintiff a visa. It argues that "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." 21st Century Telesis Joint Venture v. FCC, 318 F.3d 192, 198 (D.C. Cir. 2003) (citation

---

[3] Defendants correctly note that the doctrine of consular non-reviewability is unaffected by the APA's presumption of judicial review of agency action. See Saavedra Bruno, 197 F.3d at 1157–58. Because that doctrine does not apply at all, for the reasons discussed above, it necessarily does not preclude review of Plaintiffs' APA claims.

omitted). Not so. While the Court cannot order the Government to grant Plaintiff a visa, it is within the Court's power to order the Government to adjudicate Ms. Rostami's waiver application. See Patel, 134 F.3d at 933 (ordering the consulate to render a decision "to either grant or deny the visa applications . . . . no later than thirty days from the date this order is filed"). Because the Government's adjudication of Ms. Rostami's waiver application has a more than speculative chance of affecting her legal rights, the case is not moot.

B. APA Claims

The Court now turns to Plaintiffs' contention that the Government's delay in processing Ms. Rostami's waiver application violated the Administrative Procedure Act. The APA requires that agencies must pass on matters presented to them "within a reasonable time," 5 U.S.C. §555(b), and if they fail to do so, permits courts to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). At the same time, however, the APA exempts from judicial review "agency action [that] is committed to agency discretion by law." Id. § 701(a)(2).

The parties disagree on how these principles apply here. Plaintiffs argue that the Government has unreasonably delayed passing on Ms. Rostami's waiver application and that the Court should therefore compel the Government to act. The Government, in contrast, maintains that Plaintiffs' claims are unreviewable under the APA because the waiver program is governed entirely by the Proclamation (which is presidential action that is allegedly not subject to the APA) and the pace of adjudicating waiver applications is committed to agency discretion. In the alternative, the Government contends that, on the merits, the two-year delay in adjudicating Ms. Rostami's waiver application is not unreasonable Mot. at 10. The Court assumes without deciding that the Government's failure to issue a waiver decision is reviewable under the APA,

but nonetheless concludes that Plaintiffs have failed to state a claim because the two-year delay in adjudicating her application is not unreasonable under the circumstances.[4]

This Circuit applies the six-factor test established by Telecommunications Research & Action Center v. F.C.C., 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") to determine whether agency action has been unreasonably delayed. Under the TRAC test, courts must balance the following considerations:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 79–80 (citations and quotation marks omitted).

In evaluating these factors, the Circuit has stressed that determining whether an agency's delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the

---

[4] Courts may assume reviewability under the APA because the "committed to agency discretion" doctrine does not go to this Court's Article III jurisdiction. See Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1).").

11

outcome, and the resources available to the agency." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Further, the Circuit has noted "the importance of 'competing priorities' in assessing the reasonableness of an administrative delay." Id. (quoting In re Barr Laboratories, Inc., 930 F.2d 72, 75 (1991)). It therefore has refused to grant relief where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." In re Barr Laboratories, Inc., 930 F.2d at 75.

As applied here, the first and second TRAC factors strongly favor the Government. Congress has supplied no timeline for processing waiver applications. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate "'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances.'" Hawaii, 138 S. Ct. at 2418–19 (quoting Mathews v. Diaz, 426 U.S. 67, 81 (1976)). For this reason, in the related context of asylum applications, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Yavari, 2019 WL 6720995, at *8 (collecting cases).

The fourth TRAC factor also favors the Government, as the effect of compelling agency action on Ms. Rostami's waiver application would "impose offsetting burdens on equally worthy" applicants by putting her "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain." In re Barr Labs., Inc., 930 F.2d at 73, 75. Given the

approximately 15,000 waiver applications currently undergoing national security review, U.S. Dep't of State, Implementation of Presidential Proclamation 9645 at 3 (Sept. 2019), such a result would impermissibly interfere with the agency's "unique" and "authoritative [] position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way," In re Barr Labs., Inc., 930 F.2d at 76; see also Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities.").

On the other side of the scale, the third and fifth factors favor Plaintiffs. As alleged in their Petition, Plaintiffs' health and welfare are at stake because the delay in adjudicating Ms. Rostami's waiver application has caused Plaintiffs to endure a prolonged and indefinite separation, thereby forcing them to delay beginning their life as a married couple. Compl. ¶¶ 73–84. Their interests in receiving a decision are undeniably significant.

Finally, the last TRAC factor—that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" 750 F.2d at 80—is inapplicable because Plaintiffs make no allegations regarding the Government's motivations.

After carefully weighing the relevant considerations, the Court concludes that Plaintiffs have failed to establish that the two-year delay in processing Ms. Rostami's waiver application is unreasonable. The Court recognizes that the delay is substantial and imposes hardship on Plaintiffs, and it encourages the Government to act on the application as soon as possible. However, the couple's difficulties are insufficient to overcome the significant national security interests involved in assessing waiver applications and the compelling governmental interest in allowing the agency to balance its competing priorities as it sees fit. Further, the Court is

reassured that the Government is in fact processing waiver applications, given that the State Department has granted almost 10,000 waivers and that a nearly identical case before this Court (which was brought by the same Plaintiffs' counsel) was recently dismissed due to the Government's eventual resolution of the waiver application. See Attarian v. Pompeo, 19-cv-832-CRC, ECF No. 13 (Notice of Voluntary Dismissal based on the fact that "the Embassy issued the visa").[5]

C. Mandamus Claims

Because Plaintiffs have failed to establish an undue delay, their claim for mandamus relief under 28 U.S.C. § 1361 necessarily fails as well. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63–64 (2004).

IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: January 15, 2020

---

[5] The Court grants Plaintiffs' Motion for Judicial Notice of the congressional testimony of Edward Ramotowski, Deputy Assistant Secretary of the State Department's Bureau of Consular Affairs, and the excerpt of the State Department's Foreign Affairs Manual. These documents, however, do not change the Court's conclusion. If anything, they support the Government as they show that the new automated vetting process is enabling the Government to work through the backlog of waiver applications.